The first is number 14-3683 Benihana of Tokyo Inc, Benihana Inc et al, Messrs. Manson and Fine. May it please the court, my name is Joseph L. Manson III and I represent the appellate Benihana of Tokyo LLC. I request four minutes for rebuttal. That's fine. Maybe you could start with whether we have jurisdiction. Your Honor, it's one thing that Benihana Inc and Benihana of Tokyo agree on, which is a bit unusual, is the fact that the court does have jurisdiction. In the case before you, the judge and the district court issued her order on July 22, 2014, granting the defendant's motion for assembly judgment, which disposed of all of the appellant's claims in the case, and finding that the counterclaims of the appellee were moot. On August 19, 2014, the notice of appeal was filed in this case by Benihana of Tokyo. Two months later, in October, the parties reached a stipulation of settlement with respect to the issues on the counterclaim, which the appellee desired to have submitted to the court, although the case had already been decided. After saying that the counterclaims were moot, did the district court sign an order in which he dismissed a certain counterclaim? Wasn't there a subsequent order affecting the counterclaim? There was a subsequent order that related to the stipulation and the settlement that the parties had granted. But basically, in order to try to conserve judicial resources and the resources of our clients, we attempted to resolve outside of court the issues, which we did. I understand that, but did the district court dismiss the counterclaims? Well, she said they were moot, which had the effect of dismissing them under the cases that we cited in our letter brief. So it was our view when we filed the notice of appeal that all issues in the case had been resolved. So what's the current status of the counterclaim? The current status is that the court entered an order accepting the stipulation, and that the counterclaims were dismissed, all of them, but without prejudice. Yes, yes, that's exactly the problem, isn't it? Well, I understand that, with respect to the appellee's claims, that there could continue to be some involvement in the court below. But we've looked at the law in all the circuits. Other circuits have dealt with this issue. But they've dealt with it in five different ways. They've dealt with it in some different ways, but the 6th, the 8th, and the federal circuits have expressly held that dismissal without prejudice produces an appealable final judgment. We've cited the cases for that. And the 1st, 7th, and D.C. circuits have decided that such appeals without expressly reaching a holding on the jurisdictional issue, but they heard the case. Wait, might that not be because the issues that are in the counterclaim would probably have no merit anyway? Could be, or that they weren't related to the complaint. But this is not a situation where the appellant had additional claims and dismissed those claims without prejudice in order to try to get jurisdiction. In the 9th circuit, the 9th circuit analyzes the facts and basically says, you know, what's fair under the rule? Well, I thought the 9th circuit belief in DASTAR was, is there an intent to manipulate? Yes, exactly. And my point is, in this case, there certainly has not been any. In fact, it's been just the reverse. What we tried to do was to achieve judicial economies and prevent the appellee from going back into court and cranking up the proceeding again that had gone on since 2010. Hypothetically, if the settlement discussions fall through, you still have a viable counterclaim, don't you? Well, they didn't fall through. I mean, there was a dismissal. But it was dismissed, so they would have to be refiled. Which is okay because it's been dismissed without prejudice. Well, he could refile because we didn't object to it. It wouldn't even have to be in this court. He could file on a different court. I thought when I read this at first, I remember saying to my clerk, oh, don't worry. As soon as we sent out this letter, first of all, I picked up that the office, principal office, which I was aware of, I had written an opinion on it once. I said, they'll be coming through pretty soon, a stipulation changing the without prejudice to prejudice, you know, with prejudice. But I was wrong. And when I saw I was wrong, I thought to myself, this is still a live claim. Then I thought the following. Gee, if a defendant who gets sued can assert a counterclaim and then dismiss it without prejudice and stop an appeal, that's not good. That's wrong. Except that I thought, well, wait a second, that he can't dismiss it without prejudice unless the other side agrees. Because under Rule 41, he can't make an ex parte decision. So what I ended up saying was, well, these people have a specific thought of keeping this second part of the litigation alive. Well, as I said, I believe, and we put into our letter, the fact is that there has been an exchange of information. There's very little left. But, you know, theoretically, you're right. There could be a frustration of the right of the appellant to go forward because they can say, okay, well, we have to, you have to send us certain information to register these marks in some of these countries. And they can just sit on that request. Yeah, but in this case, you couldn't complain about it because you agreed to the dismissal without prejudice. We agreed to the dismissal without prejudice as a means to stop the litigation. We wanted to get the claims dismissed. We, of course, wanted the claims to be dismissed with prejudice. But the appellant said they wanted the claims to be dismissed without prejudice because they wanted to ensure that they got the benefit of their bargain. But even having said that, I believe that the better rule is the rule that's been adopted by the circuits that interpret the rules so that the appellant is not deprived of his or her right to have his case or her case heard after all of its claims have been disposed of. I think it would be a different matter. I think it would be a different question if we had three counts and we said, okay, we want to dismiss these three because we want the Third Circuit to give us guidance on the three that you decided in your summary judgment motion. But that's not our case. Our client wants to have an appeal of this order because it was final when it came out. It said that the counterclaims were moved and we filed a proper notice of appeal and we think that the court has jurisdiction. The way I read and maybe misread the submissions that you made in response to the questions that we asked, or at least the question on jurisdiction, is you in effect adopted the Ninth Circuit approach, which is, was there an intent to manipulate jurisdiction? And both you and Mr. Fine said, look, there's no attempt here to rig appellant jurisdiction in effect. But the case that the Third Circuit has, as I said, there's about five approaches. Our court tends to take what is called a pragmatic approach in Fassett and Colquitt and the Republic of Nicaragua. And essentially it's looking, what's the practical effect of the plaintiff's dismissal? Now, in one case you had a two-year statute of limitations in Fassett that was running. Here, is there any statute of limitations running or is it told? I don't believe there's any statute of limitations running because the obligations under the agreement are ongoing. Now, there could be an argument that there is with respect to the plaintiff's side, but we've got a final adjudication on our claims, on all of our claims. Are there any set of circumstances under which this kind of claim can be revived? No, but there is in the ARA, in fact, one of the provisions that we'll be talking about today, or maybe talking about depending on the time, there is a provision that has ongoing obligations and perpetuity for Benihana of Tokyo, which owned all of the franchise rights throughout the world when the company was started and which transferred 100% interest in those trademarks to Benihana Inc. and the territory of the United States of the Caribbean and South America, that's it. I won't get ahead of myself and start arguing about the case. So, Benihana of Tokyo has a continuing obligation to provide assistance if there's a country where the marks haven't been transferred. Any violation of that obligation? But that wouldn't be embraced by the counterclaims. That was simply going to be my question. That would not be embraced by the counterclaims. That would be a new used obligation? No, the counterclaims focused on specific countries and territories and the commitment was that we will believe that Benihana of Tokyo will fulfill our obligations under the ARA to provide assistance, which we have been doing. But in point of fact, it's still alive, isn't it? We haven't finished with the ones that have been named. We haven't fully completed because Benihana Inc. is waiting to get more information back from its foreign counsel in some instances. The counterclaims have been dismissed. I have to tell you this, the more you talk, the more I'm getting the feeling that there's going to be litigation over the issue in the counterclaim. And the more the court, at least the whole court gets that feeling, the less final this is. I mean, maybe the appellee will get up and say, well, we'll consent to convert the dismissal to be with prejudice. If so, that clears up the problem. But I don't hear that yet, which we haven't heard from. And the other thing, the way out was why don't you go the 54B route? Yeah, well, we have the option to do that. We've got it prepared and we're ready to do that. But it was argued that the court has jurisdiction and that the better rule, with respect to this issue and all its circuits, is to allow the appellant to go forward when all of its claims have been resolved in the court. Why don't you deal with the merits? Your Honor, with respect to the merits, the founder of Benihana, Rocky Aoki, built up this empire throughout the world and had the rights in every country to the trademarks throughout the world. Then in 1995, he agreed to sell some of those trademark rights under the ARA, which is the operative document in this case and is found at Joint Appendix 7-0. It's where I'm going to start with it, which is the first page. The agreement throughout itself has finality and completeness with respect to the transfer of the trademark rights to Benihana, Inc. In other words, Benihana, Inc. owns the trademark rights in the United States, the Caribbean, and South America. Getting off Tokyo, owns it all over the rest of the world, 90% of the globe. Asia, Europe, Africa, Australia, Mexico, Canada, everywhere. Looking first at Section 101 of the agreement, which is the transfer, it says, subject to the terms and conditions hereof, VOT agrees to sell, transfer, and sign all of VOT's right, title, and interest into the assets and the assets list in paragraph D, which is found on Joint Appendix 71, the trademarks. Now, this is really important because the judge said below that she got her interpretation of the meaning of the language that's at issue in Section 7.10, which is found in Joint Appendix 93, from the totality of the agreement. And the judge has, in her opinion, three references to the trademark being co-owned. There's no co-ownership. There's none. Is the problem here that Benihana Inc. filed certain registrations in countries that are within Benihana of Tokyo's domain? That's correct, Your Honor. And that's the essence of your complaint, and you say that that constitutes a use of the trademark. That's correct, Your Honor. And it's a use of the trademark that diminished the value of the trademark to you. That's correct, Your Honor. Under New York law, how was it a use? Any and every application under Black's Law Dictionary, under New York law, you look at dictionary definitions of the contract is not ambiguous, and you also look within the four corners of the document to see if you get an understanding of it. In order to file the application to register the trademarks, they had to use the marks. But doesn't that have to result in a loss of value of the trademark to you, Benihana of Tokyo? Our position is that it does, Your Honor. What did you allege? Because I read the contract, and they said they can't use it in a way to reduce the value or usefulness of the trademark of the other party, which, of course, immediately destroyed the nominal damages argument, because you couldn't show that there was no damages. You had to show there were damages. Now, they started to register the trademark. You complained. They withdrew it. They never registered it. It never got completed. How were you damaged? And what did you allege? How were you damaged? Well, the allegation was that there were general damages to be proved at trial. How? Could you be specific? Yes. This is a court we want to know. Yes. How were you damaged? Yes. First of all, the judge said that not only could this application by Benihana Inc. not only was it not detrimental, it could have been beneficial. That is just totally false. We still want to answer the question, how were you damaged? We were damaged because we've got somebody coming into our system in our country where we have the exclusive right, filing an application for a trademark which they would have no doubt continued on and been registered had it not been for the filing of this lawsuit. But they didn't do it. Did you not open a restaurant? Did some restaurant that you have have its standing injured? I mean, what was the damage? There is no quantifiable damage in the record that I can point to. But there has to be because it says in the contract, it's not that they just can't use it. They can't use it in a way that reduces the value or usefulness of the trademark of the other party. And also, just to add on to that, in April of 2010, I think you filed the application to the World Intellectual Property Organization. The VOT did. And you objected. You filed suit in December, and a month and a half later, again in January, they said, okay, forget it. We'll not pursue international registration in Iran and Zambia, Vietnam, et cetera. So back to Judge Greenberg's question, how were you damaged? The only damage that we can assert is that having a third party, and BI is a third party. BI is just like having Kentucky Fried Chicken filed for this. It could be anyone else. They are not a co-owner, which was an underpinning of the judge's decision. I can't say that filing the application caused $200 million in damages or $20,000 in damages. I can't say that. All I can say is that having people file in their territory, when we're representing to the world, we have those rights. Is it not significant that they withdrew the registrations almost immediately? Well, it wasn't almost immediately. Almost immediately after the suit was filed. It is significant that they withdrew it, but it's also significant that the representations that they made, the last ones, came from the lawyer who said we're not going to do it again, and the case law is clear that where there have been violations, the court still has jurisdiction to ensure it doesn't happen again by entering an order. If the contract has been breached, even if we don't have damages, under New York law, we have the right to go forward and have a trial and be awarded nominal damages. So we have a decision to report. Wait a second. That's in general when there's a breach of contract, but in this case, the contract itself required real damages because it required that it be used in a way that would be expected to reduce the value or usefulness of the trademark in your hands. That's real damages. Judge, if you have someone coming who wants to be a franchisee in one of these countries, and they do their due diligence, and they see that there's an application that's been filed by Benihana Inc., they're not going to know who's got the rights to the mark. Yeah, that's all theoretical. What happened? In other words, what is the damage that actually happened? Not things that you could make up that could have happened. What's the damage? Did this happen? Did somebody come in and say, well, we don't want to do business with Tokyo because these other people are filing this trademark? Did that happen? There's no evidence in the record that that happened, Judge. So the only damage that we can assert is damage to our territorial rights and putting us in a position of risk in the future. We don't have quantifiable damages. Could we get an expert? It may be too late now, but could we have gotten an expert to come in and say, well, in trademark law, their damage is, as they said in one of their letters, it's damage to our brand if someone comes in and they provide services in an adjacent territory that are inconsistent with the quality of the service that we provide. Was there a point where you, in fact, did the very same thing that you complained about by filing a registration in Venezuela? Is that correct? No. I don't believe so. I think that filing in Venezuela, I'm pretty sure that filing in Venezuela was before the transfer. So BOT, when it owned Venezuela, filed. But to my knowledge, there has never been a filing by BOT in B.I.'s territory. When you say before, you mean before? Before the transfer in 1995. I see. Before the transfer in 1995, BOT had the role. There had not been this agreement to divide the world up by then? I'm sorry. There had not been an agreement to divide your areas of influence? No, not at that point. In 1983, there were some assets transferred to Benihana National Corporation, which was a predecessor to Benihana Inc. But no. Okay. Thank you. Let's get back on rebuttal. Thank you very much. Thank you. Mr. Fine. May I please court Alan Fine on behalf of defendants? Would the court like me to address the jurisdictional issues? Yeah, I think that's where we ought to start. I mean, first, the dumb question is, why don't you just dismiss your counterclaims with prejudice? Well, the answer to that is because I require the court's enforcement of our stipulation. But then you could get that because the court has retained jurisdiction, right, for this particular agreement. I mean, you don't have – there's a Supreme Court case from about 20 years ago where you don't have a court reserving jurisdiction to Conan. And if there's a problem, you don't have a court to go back before. But here you've dealt with that. The court is reserving jurisdiction if there's a breach of this settlement agreement, correct? Yes, and indeed we've had to go back to the court on that issue because the – Then why not dismiss – I mean, your counterclaims – you've got – your counterclaims are what? There was a violation of 705 and 710 of the agreement? There was a violation of the agreement in that we – they were not taking care of the ministerial duties of signing documents that we needed to perfect our rights in our territory. So if our lawyer in Venezuela says we need this power of attorney filed by BOT, can you get BOT to sign this, we would presume that BOT – You've reserved with the court the ability that if you claim that the settlement agreement has been violated in some way, that you can go back and have the court enforce it. So it sounds to me like what you've got by not dismissing with prejudice your counterclaims is, you know, a belt and suspenders approach. Why do you need that? I was going to use the term in preparation today, belt and suspenders, and it's true. Your Honor, counsel and I have not discussed ways – counsel suggested another way we could do this which wasn't satisfactory to my client. I don't mind continuing to discuss it with counsel to find some way to just make sure that if I dismiss with prejudice that the – and then the lawyer from Aruba tells me that I need another document and BOT says to me, well, you've dismissed with prejudice. I suppose just, you know, getting into the procedural morass, the appeal was filed on August 19th, something like that? Something like that. And then you settled in October? Yeah, what happened was the summary judgment was issued. We were approaching a trial date, and the court issued the summary judgment, and then we reminded the court that we still – they were taking it off the docket, and we reminded the court, well, there was this counterclaim still out there, and then the court suggested that the parties engage in discussions to take care of this claim. And the essence of the claim was we needed them to sign the documents that we would need from time to time to perfect our interests in these foreign countries. Just sticking out loud, if the appeal was filed, then there was a settlement, but you haven't dismissed – and the settlement dismisses the counterclaims without prejudice. At that point, what jurisdiction does the court have if you went – or does the court have jurisdiction under 54B to do anything at that point? Well, the court, under the stipulation, retained jurisdiction to enforce the terms of the stipulation. So then we get back to the belt and suspension. Is there any relief you sought under the counterclaims that the settlement agreement doesn't give you? Any relief I sought under the counterclaims? Not that we're still pursuing. So then wouldn't your best argument be, instead of there was no intent to manipulate, which really isn't the rule here in this circuit, based on Facette and Colquitt and Republic of Nicaragua, take a pragmatic approach and essentially say, look, the chances of having a court hear our counterclaims are slim and none. Slim has left the building, so pragmatically it really should be considered a final judgment. Yes. But you didn't make that argument. You could. You could. You could change. Not too late. Not too late. You can say right now, make it a dismissal with prejudice. Well, that's my problem. My concern is if I say dismissal with prejudice and two months from now I have to go back to court to enforce the terms of the stipulation. You have the settlement agreement. What's that? You have the settlement agreement at that point. Well, you think the settlement agreement isn't adequate, which leads me to believe that this litigation then must not be over, that there's a pretty good chance of it's going to be back. You're worried about it. And I don't know. Well, you must concede then there's no final order disposing of all claims. There is no final order disposing of all claims. Well, but the claims in the counterclaim have absolutely nothing to do with the claims in the underlying case, Mr. Manson's case. I'm not sure. The circles are not concentric in any way, shape or form whatsoever. But that still doesn't answer the question. Let's say there's a claim up here and there's no concentric circle with regard to a counterclaim down here, but the way the rules are set up is that you have finality when you have nothing left for the district court to do. You have some exceptions. You have 1292B. You have 54B. You have collateral order doctrine, et cetera. But you didn't take advantage of 54B. And if you think that you've got alternate ways to get what you are seeking, be it by the counterclaim, if you were to succeed, or be it by the enforcement of the settlement agreement, why not just go back to the enforcement of the settlement agreement, give up on the counterclaim, we no longer have a discussion about jurisdiction, and we get right to the merits? In which, you know, you're seemingly in the catbird seat because you're the appellee. If it's clear to everyone that the court has retained jurisdiction to enforce the settlement agreement. Well, you have to tell me that. I mean, the district court, I think both of you think the district court has retained jurisdiction to enforce the settlement agreement. Isn't that correct? Yes. I sort of feel like Marv Throneberry in the old Miller Lite commercial. I don't know why I'm in this commercial. Because we wouldn't be discussing jurisdiction and the abstruse, you know, esoteric aspects of appellate jurisdiction if you just say what Judge Greenberg suggested. I think I've got these rights under the settlement agreement. I'm willing to say, okay, let's just be done with the counterclaims because I still have, if something happens, I still have my rights. What he said. Excuse me, what he said, yes. Yes, Your Honor. But the problem is your client is in here and you don't want to move without talking to him. And I've practiced law for 11 years and I can understand that. Yes. Believe me, I understand that. I appreciate that, Your Honor. But it may be a conversation you want to have with a client sooner as opposed to later. Yes. Why don't we go to the merits then? Your Honor, I think this is a case where we clearly were not trying to manufacture a finality, but I would submit that Mr. Manson's BOT's underlying claim is a manufactured controversy. It's a case which was filed by BOT in a situation where BOT was not enforcing its trademark rights in its territory, which in some cases backs up right next to our territory. You don't dispute for a moment that you actually invaded their territory in a manner that violated the agreement by registering the trademark in BOT's territory? I do dispute that and the court below disputed it. The filing of an application is not a breach of the agreement or an entry into their territory. As a matter of fact, the applications that were filed, the record will reflect, were filed by Noodle Time, which is the entity that actually is the holding company that owns the trademarks. They were filed by Noodle Time on behalf of BOT. There was no invasion. There was just an attempt, as the district court found, to protect the marks from third parties coming in and opening up, as they did in Canada, Benny Ha Ha. How did it end up that you got sued for the use, that is for the filing of the registrations, if you say you had nothing to do with it? No, we filed it. We filed the application, but that filing an application is no more using a trademark than filing an application for a driver's license is using a car. It's not a use and it certainly didn't damage. What happens after you file it? You get back something eventually saying it's approved or what? What do you get? Well, you would get a registration, which then would be posted out there for the world to see or for the people in that country to see that someone has registered the trademark and that you can't go and open up a Benny Na Na or Benny. But that didn't happen. It clearly did not happen. We didn't get that far because instead of picking up the phone and saying, hey, we don't like the fact that you filed this application, they made, as the old saying goes, a federal case out of it. They immediately filed a lawsuit in court. I called them up and said, why are you doing this? And then a few days later, a month or two later, we just withdrew and mooted the manufactured copyrights. What would have happened if they had not filed the complaint, if the registration process had gone through? If the registration process had gone through, I assume then the third parties out there in the world who are out there opening up fake restaurants under names that are almost like Benny Hanna wouldn't be able to do that legally in those countries. But it would have given Benny Hanna Inc. the right to protect the trademark in countries in which the registration was filed, wouldn't it? Isn't that the purpose of your filing the registration in those countries? Well, again, the registrations say Noodle Time and Benny Hanna of Tokyo, so it would not have provided those rights to Benny Hanna. Was Noodle Time working at the behest of anyone? Benzero Polly owned by Benny Hanna Inc., yes. In essence, they were your agents, weren't they? I don't mean to be cute with you at all, Your Honor. My point is that it would not have allowed Benny Hanna Inc. to go open up a Benny Hanna restaurant in those countries. I'm just wondering because the contract refers to any use, doesn't it? It refers to any use of the trademark? Any use that could reasonably be expected to reduce the value or usefulness of the trademarks to either party. Why doesn't any use include filing the registration? Clearly not. That's not what use means. That's not what anyone who deals with trademarks considers use. As a matter of fact, if you go to the statutes that we've cited in our briefs, 15 U.S.C. 1051 and 1127, use means a use in commerce. You know, you open up a restaurant, you put an ad in the paper, you use it in commerce and not merely to reserve a right in the mark. Does the agreement include that phrase, use in commerce? No. It says use, the use of trademarks. So in determining whether or not the language in the contract is ambiguous, which I think until recently both parties agreed it was not, the court should look at how a term use in trademarks, use of trademarks, is interpreted. Mr. Manson's point was before you apply for registration, you have to actually put the mark into play by use in that. So that preceded the application before the world IPO. That was the point that he just made. And so his claim is that that was the actual use of it in a territory where it could not be used. Well, I heard his words, but there's nothing in the record to suggest that there was an actual use in commerce before the application was filed. Not in any of the countries, whether Iceland or Iran or Zambia. No, of course not, Your Honor. There's nothing in the record, and I'm here to tell you it didn't happen. It did not happen. A document was filed, and that was the use. Just like if I went to the DMV and applied for a driver's license. Okay. No use. Thank you very much. We'll hear back from Mr. Manson. Excuse me? I appreciate it. Anything you want to? I have other points, but I think the court understands our position. Okay. Thank you. This was not a benevolent act by Benihana, Inc. for Benihana, Tokyo. They were not authorized to speak for Benihana, Tokyo. They didn't ask us or give us notice that they were filing it. They filed it because they had a desire to go into these countries and argue that we had abandoned the marks, or somehow they had a right to use the marks. If you look at Joint Appendix, page 59, they claim that the following, this is what Benihana, Inc. says, Benihana has not falsely claimed to be acting on behalf of Benihana, Tokyo, Inc., contrary to what the lawyer just said. The fact that Benihana, Tokyo, appears on Benihana's international registration, Sea Gamble Declaration, is a result of a scrivener's error by the United States Patent and Trademark Office. It's based upon Benihana's U.S. registration number for the Benihana mark, and Benihana transferred those to its subsidiary, Moodle Time. So, they clearly went into our territory. It clearly violates the agreement. It's our exclusive territory. They have an exclusive territory. There's no co-ownership. There's no joint ownership. Just a little background for me. Are these two companies totally independent? Yes. They started out under common control, and that common control ended when the majority stake that was owned by Benihana, Tokyo, Benihana, Tokyo had a majority stake in Benihana, Inc., until Benihana, Inc. did a refinancing that diluted them down from 51% to 35%. And then in 2012, Angela Gordon bought the company, which was public, Benihana, Inc., and took it private. So now, you have two entities that are not related at all. You have an investment banker that would like to grow, but is limited by the territory it has. So what are they doing? They're looking at our territory. That's really what's happening in this case. Hey, damages is a big issue in this case, but you say that you should be allowed to go back and prove nominal damages. Yeah. The damages question is difficult, because difficult for me. I took over this case. I looked at the record, and Judge Greenberg is right. There's nothing in the record that says that there is a specific, quantifiable, calculated amount of money that they will harm for the filing of these applications. In trademark cases, as the panel well knows, sometimes just the damage to the mark is viewed to be sufficient. That's a good point. Why don't you elaborate on that point? Was there damage to the mark? Well, there clearly is damage. I tried to explain it earlier. Our witnesses, if they'd been allowed to testify in the trial, would have explained how having registrations done is harmful to the brand, is harmful to their marketing efforts. The cost of unwinding it by filing this lawsuit is a damage that they should get back. They didn't take this down willingly. They took it down only after we filed, and even then tried to equivocate and say, well, we haven't done anything wrong. We're not going to tell you whether or not we're going to do this again. Then the judge in her order granting their motion to dismiss said, hey, you equivocated. That's not a renunciation. It was only at that point that they came back with the affidavit of the general counsel, which said we won't file internationally in their territory. Then our trademark experts said that's not good enough because they can go to the individual countries and file there. They don't have to do it through the World Organization. Then Mr. Fine, the lawyer, sends an email. That's all we have is an email from the lawyer saying we won't file anywhere in your territory, period. But the courts are clear. That's usually a good step in the right direction. Sorry? That's usually a good step in the right direction. It's a great step in the right direction, but it's not all the way there. My client wants to see a court order that says you breached the agreement by using our trademark and our exclusive territory to try to register it in your name, not in Benigno of Tokyo's name. So registration is the same as use? Yes. It is a form of use in our view. And not only that, Your Honor, if you look at joint appendix page 2.0. Isn't that a bit different from what you said on your opening, that they have to use the mark before they can attempt to register it with the World IPO? No, that was the understanding that I misspoke there. What you're saying now is that the registration equals use? Yes. What I'm saying is any time you use a trademark and they use it filling out the application, they attach the trademark, that's a use under the common meaning of the word. Now, if the court believes that use is ambiguous because it's a term of honor or something, then there's extrinsic evidence that supports their position. What do you do with the phrase that follows use, use in a manner that diminishes the value? Which really leads back to Judge Greenberg's question, how were you harmed? And you're saying that's a tough question because you picked up this case and you're not even quite sure how you were harmed. Well, it's not because I picked up the case. The problem is that you can't quantify the harm in many trademark cases. It's a harm to the brand. You can't show that six people didn't come into your restaurant in L.A. because somebody is misusing the brand in another city or another country. It's a very difficult thing to do. But this case is nothing like that. Somebody put something in an office and then pulled it out. Now, we could go around this room and except for people in this case, ask if anybody happened to go into that office and see if they saw the filing, and I don't think we'd have to worry about what the answer would be. No, but I mean, how were you injured? I mean, nobody sees it. I mean, it's like a Ron Billing bomb, okay? They ordered the platinum, I mean, the plutonium. They've got the plutonium and they say, hey, they're going to bomb. If they had ordered platinum, it would be okay. It would be okay. They probably got some platinum for a different source. So anyway, the point is the agreement says any use. It also says any use diminishes the value. That's right, and it diminishes the value when someone else applies for a trademark in your territory. And evidence of that is found in Joint Appendix 242, which is a letter from BI's Trademark Council to Benihana Tokyo that says, a pending trademark application in China to register the mark Benihana Teppanyaki and design for restaurant services. Please advise us as to the status of BOT's investigation into these matters and whether BOT has taken any action to address these third-party unauthorized uses. That's not damages. Uses. That's uses. I take it one step at a time. I've got to get to the uses before I get to the damages. We've given you almost twice the time. It would take 30 seconds to sum up. I'll sum up. The law in New York is if you don't prove damages and you've got a breach of contract, you still have a right to go to court and get an order that finds that there's been a breach of that contract. And that should be the law of the case here. And the failure to specifically prove the damages at summary judgment where there are witnesses that are going to testify to it at trial, you should have had a right to go to trial. And we would request that you reverse the decision. Thank you. Thank you to both counsel. Obviously, if you want us to get to the merits of this, I think that you see there is a path to doing so. And I would suggest that if you opt for that path, it would be done sooner as opposed to later. Thank you for both counsel for well-presented arguments. We'll take the matter under advisement and call our second case.